UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATRICE WILLIS,

            Plaintiff,

v.

CSL MANAGEMENT L.L.C.,

            Defendant.

                                      /

Case No. 2:21-cv-10805

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT [26]**

Plaintiff Latrice Willis filed the present employment action against Defendant CSL Management. ECF 1; 15. After the close of discovery, Defendant moved for summary judgment on all claims. ECF 26. The parties briefed the motion. ECF 28; 29.[1] For the reasons below, the Court will grant the motion for summary judgment.

**BACKGROUND**

Plaintiff began working at Cedarbrook Senior Living, an assisted living home, in late 2019. ECF 26-5, PgID 416. Defendant hired Plaintiff to work as a "Resident Service Associate/Personal Care Aide." ECF 26-7, PgID 424; ECF 26-17, PgID 490. As a caregiver Plaintiff was tasked to "[a]ssist and provide direction to residents with personal care needs which enable[d] the resident to maintain good personal hygiene, to carry out activities of daily living, to maintain good health[,] and to participate in

---

[1] Based on the briefing of the parties, the Court will resolve the motion without a hearing. *See* Fed. R. Civ. P. 78(b); E.D. Mich. L.R. 7.1(f)(2).

1

the activities of the community." ECF 26-7, PgID 424. Plaintiff would also "physically take [residents] to the bathroom, wash them up," and generally assist the residents "in grooming, hygiene, dressing, [and] nutrition." ECF 26-4, PgID 399. The position also included certain "environmental adaptability" requirements, such as "continuous exposure to residents who are ill," and "exposure to hazardous materials and infectious diseases." ECF 26-7, PgID 425 (alterations omitted).

In March 2020, COVID-19 spread across the country. *See* ECF 26-17, PgID 490. Defendant obtained personal protective equipment (PPE) "for staff members, including masks, surgical masks, gloves, gowns, and face shields." *Id.* Yet "[m]ultiple employees, including Plaintiff, stopped reporting to work when the pandemic began." *Id.* In fact, "Plaintiff worked her last shift" on March 18, 2020. *Id.*; *see* ECF 26-4, PgID 404.

In April 2020, Defendant's human resources "began calling employees that stopped reporting to work to determine if they would return . . . . Employees who did not respond or who stated they would not return to work were designated as voluntary resignations." ECF 26-17, PgID 490–91. On the morning of April 9, 2020, human resources contacted Plaintiff by phone after Plaintiff had been inexplicably absent from work for three weeks. *Id.* at 491. During the call, Plaintiff explained that "she was afraid to return to work because of COVID-19." *Id.* Still, human resources told Plaintiff that she needed to inform Defendant no later than noon that day whether she would return to work or voluntarily resign from her position. *Id.* Plaintiff failed to contact Defendant by noon and was accordingly "designated as a voluntary

resignation" on April 9, 2020. *Id.* Defendant emailed Plaintiff informing her of the resignation that afternoon. ECF 26-20, PgID 557.

Then, one day later, Plaintiff emailed human resources a medical note stating that she was diabetic and requested a leave of absence through the end of May 2020. ECF 26-21, PgID 559. Before receiving the medical note, human resources had no record "of Plaintiff mentioning diabetes or that she was allegedly diabetic." ECF 26-17, PgID 491; *see* ECF 26-4, PgID 398. Nor did Plaintiff "request[] any accommodations prior to the April 10, 2020[] medical note." ECF 26-17, PgID 491.

But Plaintiff had never been diagnosed with diabetes, only with prediabetes. ECF 26-4, PgID 403. She understood a prediabetes diagnosis to mean that she had "blood sugar levels that are higher than normal but not high enough yet to be diagnosed as diabetes." *Id.* The prediabetes diagnosis did not "ever impact [her] ability to do [her] job." *Id.* at 413.

After the human resources department received the medical note, which Plaintiff sent after Defendant sent the resignation email, human resources told her that the department "could not accept [the] note from her medical provider as sufficient to provide a leave of absence[] and that she needed to come back to work or resign." ECF 26-22, PgID 561. Human resources also "reminded Plaintiff that [Defendant] had multiple forms of PPE which employees were required to use, and which would limit the spread of COVID-19." ECF 26-17, PgID 492; *see* ECF 26-4, PgID 405. But Plaintiff did not believe that the PPE was sufficient protection and refused to return to work. ECF 26-4, PgID 404–06; ECF 26-17, PgID 492. She also

knew that she could not perform her job remotely. ECF 26-4, PgID 399, 404. Plaintiff did not return to work. ECF 26-22, PgID 561; *see* ECF 26-4, PgID 406.

## **LEGAL STANDARD**

The Court must grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must point to specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

4

**DISCUSSION**

Plaintiff brought eleven claims against Defendant, and Defendant moved for summary judgment on all eleven claims. The Court will address each in turn.

I.     Family First Coronavirus Response Act (FFCRA)

Plaintiff claimed that Defendant violated the FFCRA when it terminated Plaintiff after (1) she "was ordered to self-quarantine by her medical provider," (2) she "was subject to federal, [S]tate, and local quarantine and isolation orders related to COVID-19" "because of her pre-existing conditions," and (3) she "was caring for her children whose school and place of care were closed for reasons related to the COVID-19 pandemic." ECF 15, PgID 99. Defendant moved for summary judgment on the claim "because [Plaintiff] was not eligible for leave under the FFCRA." ECF 26, PgID 370.

The FFCRA was a temporary measure, effective from April 2020 until December 2020, that "required certain employers [to] provide up to two weeks of paid sick leave for employees who are or may be infected with COVID-19." *Kovacevic v. Am. Int'l Foods, Inc.*, No. 1:21-cv-72, 2021 WL 3629756, at *2 (W.D. Mich. Aug. 17, 2021); Families First Coronavirus Response Act, Pub. L. No. 116-127, § 5102, 134 Stat. 178 (2020). Employees were given paid sick leave if the employee could not work or telework "due to a need for leave because":

> (1) The employee is subject to a Federal, State, or local quarantine or isolation order related to COVID-19.
> (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID-19.
> (3) The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis.

(4) The employee is caring for an individual who is subject to an order as described in subparagraph (1) or has been advised as described in paragraph (2).
(5) The employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions.
(6) The employee is experiencing any other substantially similar condition specified by the Secretary of Health and Human Services in consultation with the Secretary of the Treasury and the Secretary of Labor.

§ 5102(a). The FFCRA noted a single exception immediately after the above list: "Except that an employer of an *employee who is a health care provider* or an emergency responder may elect to exclude such employee from the application of this subsection." *Id.* (emphasis added). "The regulations [define] 'health care provider'" as "[n]urses, nurse assistants, medical technicians, and any other persons who directly provide [the following health care] services": "diagnostic services, preventive services, treatment services, or other services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care." *Valdivia v. Pudacah Ctr. for Health & Rehab.*, 507 F. Supp. 3d 805, 809 (W.D. Ky. 2020) (quoting 29 C.F.R. § 826.30).

Defendant excluded Plaintiff from the paid sick leave provision of the FFCRA because she was a health care provider. When Plaintiff testified about her caregiving duties at the assisted living home, her explanation showed that she provided "services that are integrated with and necessary to the provision of patient care and, if not provided, would adversely impact patient care." *Id.*; *see* ECF 26-4, PgID 399. For instance, she would "[a]ssist and provide direction to residents with personal care

6

needs" and help them "carry out activities of daily living" and "maintain good health." ECF 26-4, PgID 399. Plaintiff would also "physically take [residents] to the bathroom, wash them up," and generally assist the residents "in grooming, hygiene, dressing, [and] nutrition." *Id.* Simply put, her position at the assisted living home centered on "the provision of patient care." *Valdivia*, 507 F. Supp. 3d at 809. And it is undisputed that Plaintiff could not perform her job remotely. ECF 26-4, PgID 399, 404. By law, Defendant could therefore "elect to exclude [Plaintiff] from the application of" paid sick leave under § 5102(a) of the FFCRA. And Defendant elected to exclude Plaintiff when it required Plaintiff to return to work during COVID-19. *See* ECF 26-20; 26-22, PgID 561 ("I explained to [Plaintiff] . . . that she needed to come back to work or resign.").

Plaintiff argued that Defendant "provided no proof that it has ever made any such election as to any class of employees, much less as to Plaintiff specifically" or that it took the "require[d] affirmative steps" to exempt employees from the FFCRA. ECF 28, PgID 605. But Plaintiff offered no authority to explain what "affirmative steps" Defendant needed to take. *See id.* To be sure, Plaintiff generally cited 29 C.F.R. § 826.40 to support her argument. *Id.*; *see* 85 F.R. 19326-01, 2020 WL 1663275, at *19352 ("Employer coverage"). But that section does not apply here; it only "addresses which *employers* are covered by the [FFCRA], that is, which employers must provide paid leave to employees." 2020 WL 1663275, at *19335. Yet *employee* eligibility is the focus of § 5102(a). Section 826.30, then, is the applicable section here, which discusses "[e]mployee eligibility for leave," and the "[e]xclusion of [e]mployees

7

who are health care providers." *Id.* at *19351. Put another way, the regulations show that "Congress [] plainly afforded employers the *discretion* to decline FFCRA protections for those employees who provide health care." *Ware v. N. Shore Placement Servs., Inc.*, No. 1:22-cv-1169, 2023 WL 1108045, at *5 (N.D. Ohio Jan. 30, 2023) (emphasis added). Without positive law pointing to the contrary, the Court finds that Defendant properly exercised its discretion by excluding its employees who were health care providers from receiving paid sick leave under § 5102(a) of the FFCRA. Plaintiff had no right to leave under the FFCRA, and the Court will grant summary judgment on the FFCRA claim.

II. <u>Disability Discrimination, Hostile Work Environment, and Failure to Accommodate Claims</u>

Plaintiff alleged that Defendant discriminated against her based on her disability in violation of the ADA and the PWDCRA. ECF 15, PgID 102–04 (claims four and five). And she claimed that Defendant failed to accommodate Plaintiff due to her diabetes disability in violation of the ADA and the PWDCRA. ECF 15, PgID 107–10 (claims eight and nine). She also alleged that Defendant created a hostile workplace environment in violation of the ADA. *Id.* at 111–12 (claim eleven).

To establish a prima facie case of disability discrimination under the ADA and the PWDCRA,[2] Plaintiff is required to prove that she is disabled within the meaning

---

[2] "Resolution of Plaintiff's ADA claim will generally resolve Plaintiff's PWDCRA claim because the PWDCRA 'substantially mirrors the ADA.' Accordingly, the Court will evaluate Plaintiff's ADA and PWDCRA claims together, under the ADA's framework." *Reeder v. Cnty. of Wayne*, 177 F. Supp. 3d 1059, 1075 (E.D. Mich. 2016) (quoting *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012)); *Aldini v. Kroger Co. of Mich.*, 628 F. App'x 347, 350 (6th Cir. 2015).

of the statutes. *Bradshaw v. Goodyear Tire & Rubber Co.*, 485 F. Supp. 2d 821, 826–27 (N.D. Ohio 2007) (collecting cases). To establish a prima facie case for failure to accommodate, Plaintiff also needed to show that "[s]he is disabled under the ADA." *Aldini*, 628 F. App'x at 350. And "[u]nder the ADA, a hostile work environment claim requires a plaintiff to demonstrate five elements," the first of which is that "[s]he was disabled." *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005). Consequently, claims four, five, eight, nine, and eleven turn on whether Plaintiff is disabled.

Under the ADA, a disability is "(A) a physical or mental impairment that substantially limits one or more major life activities; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).

"Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." § 12102(2)(A). A "record of an impairment" exists if a plaintiff has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 339 (6th Cir. 2002) (citation omitted). But "some diagnosis must explain the duration or severity of the impairment, and self-described symptoms without corroborating medical evidence or any diagnosis are insufficient to establish a substantial limitation on a major life activity." *Williams v. AT&T Mobility Servs., LLC*, 186 F. Supp. 3d 816, 825 (W.D. Tenn. 2016) (cleaned up). And to be "regarded

9

as having such an impairment," the individual must show "that he or she has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." § 12102(3)(A). The third prong "is meant to cover those who do not presently suffer from a substantially limiting impairment[] but are regarded as having such an impairment." *MX Grp., Inc.*, 293 F.3d at 340.

The day after human resources emailed Plaintiff to clarify that Defendant understood her extended absence to mean that she "ha[d] resigned [her] position with [Defendant]," Plaintiff submitted a short note from her doctor that requested leave "due to her being at high risk as she has diabetes." ECF 26-20, PgID 557; ECF 26-21, PgID 559. Both parties agreed that Plaintiff had never told Defendant she had diabetes before that day. ECF 26, PgID 268; *see* ECF 28, PgID 609. And Plaintiff even explained that she did not know why the doctor had written that she has diabetes because she told that doctor she had only "prediabetes." ECF 26-4, PgID 407.

Simply put, Plaintiff has never been diagnosed with diabetes. *Id.* at 403. She therefore was not "substantially limit[ed]" in any "major life activities" because of diabetes since she did not have the disease. Rather, she is "prediabetic," which means she has "blood sugar levels that are higher than normal but not high enough yet to be diagnosed as diabetes." ECF 56-4, PgID 403; *see* 42 U.S.C. § 12102(1)(A). And no evidence suggested, nor did Plaintiff argue, that she could not participate in major life activities due to her elevated blood sugar. *See, e.g.*, ECF 26-4, PgID 413 (Plaintiff

10

confirming that "having prediabetes . . . [did not] ever impact [her] ability to do [her] job"); ECF 28.

What is more, the only evidence of diabetes Plaintiff provided to Defendant was a single medical note that stated she had diabetes, but it included no other explanation of "the duration or severity of the impairment." *Williams*, 186 F. Supp. 3d at 825. And she admitted that the medical note was not in line with her *pre*diabetic diagnosis. Thus, Plaintiff had no "record" of being disabled because of diabetes. *MX Grp., Inc.*, 293 F.3d at 339; *see* 42 U.S.C. § 12102(1)(B).

Last, Plaintiff was not "regarded as having [diabetes]" for two reasons. 42 U.S.C. § 12102(1)(C). First, she claimed to be "presently" suffering from a disability, *MX Grp., Inc.*, 293 F.3d at 340. Second, Defendant did not know Plaintiff had diabetes or even prediabetes on the day it sent her the first resignation email because Plaintiff submitted the doctor's note a day later. ECF 26-20, PgID 557; ECF 26-21, PgID 559. And even after finally being advised of the note, Defendant did not "feel that the [note] provided sufficient information with regard to her diagnosis." ECF 26-18, PgID 501; *see Williams*, 186 F. Supp. 3d at 825.

In sum, Plaintiff failed to show that a reasonable jury could find her to be disabled under the ADA and the PWDCRA. *See Anderson*, 477 U.S. at 248. Plaintiff therefore cannot establish a prima facie case for claims four, five, eight, nine, and eleven. *See Bradshaw*, 485 F. Supp. 2d at 826–27; *Plautz*, 156 F. App'x at 818; *Aldini*, 628 F. App'x at 350. Accordingly, the Court will grant summary judgment to Defendant on those claims.

III. <u>Retaliation and Interference Claims</u>

Plaintiff's sixth and seventh claims alleged retaliation and interference in violation of the ADA and the PWDCRA. ECF 15, PgID 104–07. Because the retaliation and interference claims involve different legal tests, the Court will resolve the claims separately.

    *A.*    *Retaliation*

"As with [Plaintiff]'s disability discrimination claims, [the] federal and [S]tate law retaliation claims may be analyzed together." *Neely v. Benchmark Fam. Servs.*, 640 F. App'x 429, 436 (6th Cir. 2016) (citation omitted). "A plaintiff may prevail on a disability-retaliation claim even if the underlying claim of disability fails." *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007) (quotation marks and quotation omitted). Under the ADA, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To prevail on a retaliation claim, a plaintiff must "show that (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action." *Bryson*, 498 F.3d at 577.

Plaintiff failed to show that she engaged in a protective activity that caused Defendant to send her notice of her resignation. The undisputed facts show that the medical note could not have served as the basis for Defendant designating her as

12

having voluntarily resigned because she sent the note the day *after* Defendant notified her of the resignation. ECF 26-20, PgID 557; ECF 26-21, PgID 559. And no other evidence suggests that Plaintiff mentioned to Defendant on or before April 9, 2020 that she had a disability or needed an accommodation. *See, e.g.*, ECF 26-4, PgID 398; ECF 26-18, PgID 500–01; ECF 28, PgID 609 ("Defendant perceived [Plaintiff] as being disabled based on the same note indicating that she had diabetes."). In sum, even if her submission of the April 10 medical note constituted a "protected activity" under the ADA, *Bryson*, 498 F.3d at 577, that activity lacked a causal connection with her resignation status.

### B. Interference

"The ADA's interference provision makes it illegal to 'interfere with' an individual's 'exercise or enjoyment' of ADA-protected rights. *Post v. Trinity Health-Mich.*, 44 F.4th 572, 576 (6th Cir. 2022) (quoting 42 U.S.C. § 12203(b)).[3] While the Sixth Circuit has recognized that "a plaintiff can assert a claim of interference with employment-related rights under § 12203(b) only against an employer," *id.* at 579,

---

[3] Defendant pointed out that "[t]he PWDCRA does not provide any cause of action related to interference for an individual employee; the only 'interference' language in the PWDCRA relates to housing discrimination or interfering with the Michigan Department of Civil Rights." ECF 26, PgID 381 (quoting Mich. Comp. Laws § 37.1501-37.1602). Plaintiff did not respond to the assertion. *See* ECF 28, PgID 611–12. Rather, Plaintiff proceeded with argument on her interference claim as to only the ADA. Accordingly, the Court will assume that Plaintiff has abandoned the PWDCRA interference claim and will grant summary judgment to Defendant on it. *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

13

the circuit has not confirmed the elements of the claim. But "[o]ther courts have recognized a cause of action under the anti-interference provision" and "appl[y] a four-part test akin to the test applied in the context of the Fair Housing Act's anti-interference provision." *Post v. Health-Mich.*, 2021 WL 3269058, at *4 (E.D. Mich. July 30, 2021) (citing *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017)). Under that test, a plaintiff must show that the defendant "coerced, threatened, intimidated, or interfered *on account of* her protected activity." *Frakes*, 872 F.3d at 551 (citation omitted and emphasis added). Logic dictates that an interference claim cannot lie if the allegedly interfering action lacks any connection to the protected activity. Thus, a causation analysis similar to that of a retaliation claim is required.

Plaintiff argued that Defendant interfered with her ability to exercise her rights under the ADA "when Defendant refused to accept her restrictions and terminated Plaintiff for abiding by those same restrictions." ECF 28, PgID 611. Because the Court already found that Defendant's act of designating Plaintiff as voluntarily resigned lacked any connection to her medical note, the Court will accordingly find that the interference claim must also fail. Indeed, Plaintiff's argument that "Defendant terminated Plaintiff immediately and refused to accept her note" ignores the critical timing of the resignation email and the medical note: Plaintiff resigned the day before she told her employer about the note, which, in any event, wrongly stated that she had diabetes. No reasonable juror could therefore find that Defendant terminated Plaintiff based on the note, her alleged diabetes, or any

14

other impermissible reason under the ADA. *See Anderson*, 477 U.S. at 248. Summary judgment is therefore granted on the interference claim.

IV. <u>Title VII Hostile Work Environment Claim</u>

Plaintiff alleged that Defendant created a hostile work environment in violation of Title VII. ECF 15, PgID 110–11. Defendant moved for summary judgment on the claim because the "[c]omplaint fail[ed] to identify any adverse acts related to any of the classes protected by Title VII" like "race, color, religion, sex[,] or national origin." ECF 26, PgID 385 (citing ECF 15 and 42 U.S.C. § 2000e-2(a)(1)). Plaintiff lodged no response to the argument in her brief. *See* ECF 28. The Court will therefore grant summary judgment on the Title VII claim because Plaintiff abandoned it. *See Brown*, 545 F. App'x at 372.

V. <u>Remaining State-Law Claims</u>

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). The Court has original jurisdiction over claims one, four, six, eight, ten, and eleven because they raise federal questions. *See* ECF 15, PgID 99–100, 102–08, 110–12; 28 U.S.C. § 1331. Claims two and three alleged violations of Michigan public policy and the Michigan COVID-19 Employment Rights Act and do not raise a federal question. *Id.* at 100–02. And the parties lack complete diversity of citizenship. *Id.* at 96–97. Thus, the Court has subject-matter jurisdiction over claims two and three based on only supplemental jurisdiction

15

because the claims are "so related to [the federal-question claims] that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see* ECF 15, PgID 96–97 ("Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's [S]tate law claims.").

But when "the district court has dismissed all claims over which it has original jurisdiction," it "may decline to exercise supplemental jurisdiction over a claim." 28 U.S.C. § 1367(c)(3). The Court has dismissed all claims against Defendant that raise a federal question. Thus, no claims remain over which the Court has original jurisdiction. The Court will accordingly "decline to exercise supplemental jurisdiction over" the two remaining State-law claims. *Id.*

## CONCLUSION

The Court will grant summary judgment to Defendant on claims one, four, five, six, seven, eight, nine, ten, and eleven. Those claims are dismissed with prejudice. And the Court will decline to exercise supplemental jurisdiction over the State-law claims, claims two and three. The State-law claims are dismissed without prejudice.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion for summary judgment by Defendant [26] is **GRANTED**. Claims two and three are **DISMISSED WITHOUT PREJUDICE**. All other claims are **DISMISSED WITH PREJUDICE**.

This is a final order that closes the case.

**SO ORDERED.**

                                                  s/ Stephen J. Murphy, III
                                                  STEPHEN J. MURPHY, III
                                                  United States District Judge

Dated: July 5, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 5, 2023, by electronic and/or ordinary mail.

                                                  s/ R. Loury
                                                  Case Manager